370 S.E.2d 728

**STATE of West Virginia**

v.

**Paul Franklin RICHESON.**

**No. 17420.**

Supreme Court of Appeals of West Virginia.

June 30, 1988.

Silas Taylor, Deputy Atty. Gen., for the State.

Edward L. Bullman, Public Defender Corp., Moundsville, for Richeson.

PER CURIAM:

■ This is an appeal from a final order of the Circuit Court of Tyler County, entered October 11, 1985, which adjudged the appellant, Paul Franklin Richeson, guilty of the offense of negligent homicide. The appellant's principal contention on appeal is that the evidence was insufficient to support the conviction. We agree, and we reverse the judgment of the circuit court.

The charge against the appellant arose out of an automobile accident which occurred at the intersection of Route 2 and Graham Avenue in Sistersville, Tyler County, at approximately 10:00 p.m. on the night of September 29, 1984. The appellant was driving south on Route 2 when his car collided with a northbound vehicle driven by Harold Scott Hubbard. Sixteen days later, Hubbard died of injuries received in the collision without regaining consciousness.

In October 1984, the appellant was indicted on a charge of negligent homicide in violation of W.Va.Code § 17C–5–1 (1986 Replacement Vol.). After a trial before a jury in the Circuit Court of Tyler County on September 23, 1985, the appellant was found guilty and, by order entered October 11, 1985, was sentenced to confinement in the county jail for a period of one year.

■ The test of the sufficiency of the evidence to support a criminal conviction was stated in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Taken in this light, the evidence adduced at trial showed that the appellant had broken his arm or wrist at work on the day of the accident. The appellant was driven by a friend, Linda Coleman, to the emergency room of Sistersville General Hospital for treatment at approximately 6:30 p.m. The appellant's right arm was placed in a cast

from the thumb to the elbow, and he was given four Tylenol III tablets to be taken for pain at six-hour intervals. The appellant ingested one of these prescription tablets upon leaving the hospital.

Ms. Coleman then drove the appellant on various errands until shortly before 10:00 p.m., when they stopped at a convenience store in Sistersville to buy gasoline and beer. The appellant testified that Ms. Coleman complained of not feeling well and asked him to drive. The appellant took the wheel and drove to a nearby restaurant where he and Ms. Coleman purchased sandwiches at a drive-through window. The appellant then drove south on Route 2, a two-lane highway.

At the intersection of Route 2 and Graham Avenue, approximately one-half mile south of the restaurant, the car driven by the appellant drifted across the center line and struck the approaching Hubbard vehicle in the northbound lane, propelling it into a nearby utility pole. Although the headlamps of the Hubbard vehicle were lit and there was no evidence that Hubbard was driving improperly, the appellant testified that he did not see the oncoming car until the moment of impact. At the time of the accident the road was dry, the weather was clear, the traffic lanes were clearly marked and the intersection was illuminated by a street lamp. Neither driver gave any audible or visible warning prior to the collision, and there were no skid marks or other evidence indicating that either the appellant or Hubbard had attempted to brake or swerve to avoid impact. Nor was there any evidence that either of the vehicles was travelling at an excessive rate of speed. The investigating officer testified that following the accident, the appellant seemed shaken but did not appear to be under the influence of alcohol or drugs. The appellant was cited at the scene for driving without an operator's license.

■ The appellant contends that this evidence does not demonstrate that he was guilty of negligent homicide. The negligent homicide statute, W.Va.Code § 17C–5–1(a), provides: "When the death of any person ensues within one year as a proxi-

mate result of injury received by the driving of any vehicle anywhere in this state *in reckless disregard of the safety of others,* the person so operating such vehicle shall be guilty of negligent homicide." (Emphasis added.). This statute requires something more than an act of ordinary negligence; the standard is compatible with that used in involuntary manslaughter prosecutions brought for causing a death while operating a motor vehicle, i.e., " 'negligence so gross, wanton and culpable as to show a reckless disregard of human life.' " *State v. Vollmer,* 163 W.Va. 711, 716, 259 S.E.2d 837, 840–841 (1979), *quoting Jenkins v. Commonwealth,* 220 Va. 104, 107–108, 255 S.E.2d 504, 506 (1979) and *King v. Commonwealth,* 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977). The State, of course, bears the burden of proving this essential element of the offense of negligent homicide beyond a reasonable doubt. *See State v. Knight,* 168 W.Va. 615, 285 S.E.2d 401 (1981).

The State apparently concedes that the mere fact that the appellant's vehicle crossed the center line and was on the wrong side of the road at the time of the collision, is not, alone, sufficient to support a negligent homicide conviction. *See State v. Lawson,* 128 W.Va. 136, 36 S.E.2d 26 (1945). Neither can conviction be premised solely on the appellant's unexplained failure to see the oncoming vehicle or his failure to have a valid driver's license. *See Duncan v. Hixon,* 223 Va. 373, 288 S.E.2d 494 (1982); *Lewis v. Commonwealth,* 211 Va. 684, 179 S.E.2d 506 (1971). While such acts or omissions may evince a failure to exercise due care, they do not ordinarily amount to gross, wanton or culpable negligence in the absence of aggravating circumstances indicating rashness or a conscious indifference to the probable dangerous consequences of driving. *See Jenkins v. Commonwealth, supra. See generally* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 332 (1980).

■ The only aggravating circumstance pointed to by the State in this case is the fact that the appellant was driving with a disabled right arm after having in-

gested a prescription pain medication. Certainly, the physical condition of the driver of a motor vehicle may be taken into consideration in determining his fault in causing an accident resulting in a death. *Bell v. Commonwealth,* 170 Va. 597, 195 S.E. 675 (1938). *See* 7A Am.Jur.2d *Automobiles and Highway Traffic* §§ 580, 772, 1024 (1980); 61 C.J.S. *Motor Vehicles* §§ 516(3), 264 (1970). However, the mere fact that a motor vehicle operator suffered from a physical disability does not demonstrate the high degree of negligence necessary to sustain a conviction for negligent homicide; there must be a showing that such disability contributed to the accident resulting in the death. *See Trippel v. Lott,* 19 Ill.App.3d 936, 312 N.E.2d 369 (1974); *Richie v. Elmquist,* 283 Minn. 375, 168 N.W.2d 332 (1969); *People v. Williams,* 187 Misc. 299, 61 N.Y.S.2d 252 (1946). *See generally* Annotation, *Criminal Responsibility of Motor Vehicle Operator for Accident Arising from Physical Defect, Illness, Drowsiness, or Falling Asleep* 63 A.L.R.2d 983 (1959). Similarly, one who takes medication on the advice of a doctor cannot be held liable for injuries or death resulting from his subsequent operation of an automobile unless it is shown that the driver could reasonably have forseen that the medication would affect his ability to drive. *See Mikula v. Balogh,* 9 Ohio App.2d 250, 224 N.E.2d 148 (1965); *Presleigh v. Lewis,* 13 Wash.App. 212, 534 P.2d 606 (1975); *Kaiser v. Suburban Transportation System,* 65 Wash.2d 461, 398 P.2d 14, *amended on other grounds,* 65 Wash.2d 461, 401 P.2d 350 (1965). *See generally,* 60A C.J.S. *Motor Vehicles* § 264 (1980).

Here, the State presented no evidence that the appellant's ability to drive was affected by either his broken arm or by his use of prescription medication. Although the appellant admitted that he used only his left arm to drive, there was no showing that his inability to use his right arm affected his driving performance. It was not even shown that the appellant was right-handed. Nor was there any evidence as to the effects of Tylenol III or that the appellant was or should have been aware that the drug would affect his ability to drive, either because he was advised to refrain from such conduct by the dispensing physician or because of previous experience with the drug. While we might agree that the evidence at trial demonstrated a lack of due care on the part of the appellant in driving under these circumstances, in the absence of any showing that the appellant was or should have been aware of the probable tragic consequences of his actions, the record simply does not support the conclusion that he took the wheel "in reckless disregard of the safety of others."

In summary, we conclude that the evidence adduced at trial was manifestly inadequate to sustain the conviction of negligent homicide. In such circumstances, retrial of the appellant on the same charge is barred by double jeopardy principles. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979). Accordingly, we reverse the judgment of the Circuit Court of Tyler County, and we remand this case for entry of a judgment of acquittal.

Reversed and remanded.