**RINEHART, Appellant,**

v.

**MAIORANO et al., Appellees.**

[Cite as *Rinehart v. Maiorano* (1991), 76 Ohio App.3d 413.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–012.

Decided Oct. 25, 1991.

*George C. Rogers,* for appellant.

*Mark B. Smith* and *Craig S. Cobb,* for appellees.

---

*Per Curiam.*

This case is before us on appeal from judgments of the Lucas County Court of Common Pleas. Plaintiff-appellant, Robert Rinehart, appeals the granting of partial summary judgment to defendant-appellee, Gallon, Kalniz & Iorio Co., L.P.A. ("GKI"), and the judgment in his favor after a trial to a jury.

The undisputed facts of this case are as follows. On January 25, 1985, Rinehart was discharged from his employment with the Reuben Company as chief building engineer at the Government Center project. Reuben alleged that Rinehart was harassing females on the job and was unable to get along with coworkers and other contractors. Moreover, another Reuben Company employee had filed charges against Rinehart with the Ohio Civil Rights Commission. Believing the allegations against him were defamatory, Rinehart contacted defendant-appellee, Alex Maiorano, an associate attorney with GKI, to discuss the possibility of taking legal action against Reuben.

At their first meeting on June 21, 1985, Maiorano told Rinehart that his fee would be a $1,000 retainer and one third of any amount recovered. He further indicated that he would review materials Rinehart submitted to him to determine if Rinehart had a cause of action. At that first meeting, Rinehart gave Maiorano a check for $500 made out to GKI, and approximately one month later submitted a second check for $500, also made out to GKI. Both checks were negotiated by GKI. Furthermore, Rinehart testified that at this first meeting, Maiorano told him that the statute of limitations for a defamation action was one year, and that the complaint would therefore need to be filed before January 25, 1986. Maiorano denied that he ever made such a statement.

Over the ensuing months, Rinehart contacted Maiorano on several occasions to discuss the progress of his case. Maiorano gave Rinehart numerous assurances that a complaint had been filed, that settlement offers had been made and that depositions were scheduled. Specifically, Maiorano told Rinehart that a deposition was scheduled for March 27, 1986, but then later told Rinehart that the deposition had been rescheduled for May 19, 1986.

On May 19, 1986, Rinehart telephoned the offices of GKI to speak with Maiorano and was told that Maiorano no longer worked there. In fact, Maiorano had separated from GKI on May 2, 1986, and opened his own law office. Rinehart then contacted Maiorano at his new office and was told there would be no deposition and that Reuben was now offering $5,000 in full settlement of the claim.

Subsequently, on July 7, 1986, Rinehart contacted the Clerk of the Lucas County Court of Common Pleas and was told that no complaint had ever been filed on his behalf. Rinehart then contacted Maiorano who explained that the clerk was mistaken and a complaint had been filed in 1985. However, the following day, Rinehart again telephoned the Clerk of Courts and was told that a suit had been filed on July 7, 1986, at 3:51 p.m.

On September 16, 1986, Rinehart's suit against Reuben was dismissed for failure to file within the proper one-year statute of limitations. Thereafter,

Rinehart filed the instant action against GKI and Maiorano, asserting claims for legal malpractice and fraud. Maiorano failed to answer, and a default judgment was entered against him on July 27, 1987. The trial court, however, specified that Maiorano was entitled to a jury trial on the issues of proximate cause and damages.

On June 28, 1988, GKI filed a motion for summary judgment on the malpractice claim. Finding that Rinehart's underlying claim for defamation was meritless, the trial court granted GKI's motion for summary judgment but noted that the fraud claim against GKI was still pending. Thereafter, Maiorano filed a motion for summary judgment on the ground that Rinehart's underlying claim was meritless, and GKI filed a second summary judgment motion on the fraud claim. In a decision and journal entry of July 10, 1989, the trial court denied both motions, finding that reasonable minds could conclude that at least nominal damages could be awarded against Maiorano and that GKI could be found guilty of fraud as the principal of Maiorano.

The case proceeded to a jury trial on December 5 through 7, 1989. On December 7, the jury returned a verdict for Rinehart against Maiorano in the total amount of $2,000 ($1,500 in compensatory damages and $500 in punitive damages) and against GKI in the amount of $1,600 in compensatory damages. Moreover, in answering interrogatories, the jury found that Maiorano was guilty of fraud and had acted as GKI's agent when the fraud occurred.

On January 8, 1990, Rinehart filed a notice of appeal, appealing both the judgment entry of the final verdict, and the trial court's grant of summary judgment to GKI on the issue of legal malpractice. Rinehart has asserted the following assignments of error:

"*Assignments of Error No. 1:* The lower court erred as a matter of law by granting appellees' motion for summary judgment in its September 29, 1988 order, since genuine issues of material fact exist in this case.

"(A.) Genuine issues of material fact exist as to whether a 'qualified privilege' arose regarding the statements made about the appellant by the Reuben Company and two of its employees.

"(B.) Genuine issues of material fact exist as to whether the appellant has presented sufficient evidence to establish an actionable claim in malpractice against the appellees separate and apart from the evidence presented in the 'case within the case.'

"*Assignment of Error No. 2:* The trial court erred in refusing to accept in evidence testimony and evidence concerning the value of the loss of the underlying case and in instructing the jury that that particular item of damages had no value in the malpractice claim against defendant Maiorano.

*"Assignment of Error No. 3:* The trial court erred in refusing to instruct the jury with plaintiff's proffered jury instructions on compensatory damages as result of fraud which included fright, insult, embarrassment and humiliation.

*"Assignment of Error No. 4:* The trial court erred in refusing to give plaintiff's proffered jury instruction on attorney-client relationship which was necessary to clarify the issue of termination of agency.

*"Assignment of Error No. 5:* The trial court erred in refusing to instruct the jury with plaintiff's proffered jury instructions on punitive damages against the defendant Gallon, Kalniz & Iorio, LPA."

We will first discuss appellant's third, fourth and fifth assignments of error, as they address various aspects of the trial court's jury instructions.

Civ.R. 51(A) provides in part:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Moreover, when specific portions of a trial court's instructions are at issue, an appellate court must review the instructions as a whole. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 16, 19 OBR 71, 81, 482 N.E.2d 955, 966.

Upon review of the record before us, as well as the transcript of the trial, it is clear that appellant has failed to request that the jury instructions be included as part of the official record. Although the conference between the trial judge and the parties' counsel regarding objections to specific instructions is on the record, the actual instructions themselves are not. "The duty to provide a transcript for appellate review falls upon the appellant." *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 220, 400 N.E.2d 384, 385; see, also, App.R. 9(B). In reviewing specific jury instructions on appeal, we are required to review the instructions as a whole. *Wagenheim v. Alexander Grant & Co., supra.* When a portion of a transcript is necessary for resolution of assignments of error, and the appellant has failed to request that such portion be included in the transcript, the appellate court has no choice but to assume the validity of the proceedings below and overrule the subject assignments of error. *Maloney v. Maloney* (1986), 34 Ohio App.3d 9, 11, 516 N.E.2d 251, 253; *Knapp v. Edwards Laboratories, supra.*

Accordingly, appellant's third, fourth and fifth assignments of error are found not well taken.

In his first assignment of error, Rinehart contends that the trial court erred in granting GKI's motion for summary judgment on the issue of legal malpractice. Specifically, Rinehart argues that genuine issues of material fact existed on the issues of qualified privilege and whether Rinehart presented sufficient evidence to establish an actionable claim of malpractice.

■ We first note the standard to be applied when reviewing rulings on motions for summary judgment. Upon a summary judgment motion, the movant must demonstrate:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

Where the movant has made this tripartite demonstration, the trial court's granting of summary judgment will not be disturbed on appeal.

■ In the case below, the trial court granted summary judgment for GKI on Rinehart's claim of malpractice. Upon reviewing the evidence submitted in support of GKI's brief (Rinehart's deposition) the court concluded that Rinehart did not have an actionable claim for malpractice because he did not have an actionable claim for defamation. Specifically, the court concluded that Rinehart could not establish that the alleged defamatory statements were published or were not covered by a qualified privilege. Upon review of the record before us, we conclude that the trial court's ruling was correct.

■ In order to state a claim for legal malpractice, a plaintiff must establish "(1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058, 1060. Moreover, to prove the damages prong of a legal malpractice action, a plaintiff must prove that he would have prevailed in the original action had the attorney not been negligent. *Howard v. Sweeney* (1985), 27 Ohio App.3d 41, 43, 27 OBR 43, 45–46, 499 N.E.2d 383, 386. Accordingly, in Rinehart's claim for legal malpractice, he must be able to prove that but for the appellees' negligence, he would have prevailed in his defamation claim against Reuben.

The elements of a cause of action for defamation are "(1) an unprivileged publication, (2) false and defamatory language about another, and (3) requisite

malice." *Tohline v. Central Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 284, 549 N.E.2d 1223, 1228. Moreover, where the defamation injures one in his trade, profession or business, malice is presumed and the defamatory words are actionable *per se. Id.* However, where a qualified privilege is established, the plaintiff must prove express malice, *i.e.*, ill will, hatred, revenge, or wanton and reckless disregard for the truth, by the defendant to establish his case. *Id.*

In the case of *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 244, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718–719, the Supreme Court of Ohio defined "qualified privilege" as follows:

" 'A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.' "

In *Hahn* and subsequent cases, the court has held that if statements are made within the scope of employment, the qualified privilege attaches. Specifically, in *Evely v. Carlon Co.* (1983), 4 Ohio St.3d 163, 165, 4 OBR 404, 406, 447 N.E.2d 1290, 1292, a case factually similar to the one before us, the court stated:

"At the outset, it must be pointed out that all of the statements attributed to the officers of the appellee were made concerning the activities of the appellant arising out of his employment status with the company. None of these statements was directed to the appellant as an individual separate and apart from his employment. As such, the statements would be afforded a qualified privilege concerning matters of common business interest between the parties and, accordingly, there must be a showing that they were made with actual malice in order for the appellant to prevail. In this regard *there must be evidence adduced by the appellant beyond the mere allegations contained in the complaint.*" (Emphasis added.)

Applying these principles to the case at bar, we first note the specific allegations made in Rinehart's original defamation complaint:

"7. Heretofore, on or about January of 1985 and continuing in the City of Toledo, the defendants Reuben Company through its agents or employees and more specifically, Tim Wade and/or William Weimer in the presence of others, did speak the following lies and defamatory words: Robert Rinehart had harassed female co-workers/subordinates employed at the Reuben Company and he lacked a willingness to work with subordinates; he intimidated fellow

employees and outside contractors and he lacked leadership, or words to this effect.

"8. The words and statements listed in paragraph 7 above or words to this effect were false and defamatory."

The complaint does not allege to whom the supposed defamatory statements were spoken. GKI, however, supported its summary judgment motion with the deposition testimony of Rinehart. Through his testimony, Rinehart asserted that the following defamatory communications were made:

(1) Statements made by George Wade, president of Reuben, in the presence of William Weimer, to Rinehart about the reasons for Rinehart's discharge;

(2) Rinehart's statement to Ted Edelstein, his subsequent employer, about the reasons for his discharge;

(3) William Weimer's statement to Dan Suggs, a prospective employer, about the reasons for Rinehart's discharge;

(4) A letter from Reuben Company to Rinehart about the reasons for his discharge, and Rinehart's subsequent discussion of that letter with others;

(5) Statements made by unknown persons to Rinehart's former coworkers about the reasons for his discharge; and

(6) Statements made to Honeywell, a subcontractor of Reuben, about the reasons for Rinehart's discharge, also by persons unknown.

The statements made by persons unknown are clearly not actionable. Moreover, the statements made by Rinehart himself to Edelstein about the reasons for his discharge are also not actionable. Furthermore, the letter from Reuben to Rinehart and the statements made by George Wade in the presence of William Weimer to Rinehart, both about the reasons for Rinehart's discharge, fall well within the boundaries of a qualified privilege, for they concern activities of Rinehart arising out of his employment status with Reuben. A communication made in good faith on a matter of common interest between an employer and an employee is protected by a qualified privilege from claims of defamation. *Stearns v. Ohio Savings Assn.* (1984), 15 Ohio App.3d 18, 20, 15 OBR 39, 41–42, 472 N.E.2d 372, 374–375. Finally, statements made by William Weimer to Dan Suggs, about the reasons for Rinehart's discharge, are also protected by the qualified privilege, for an employer may relay facts, opinions, or suspicions about a former employee to that employee's prospective employer and be within the qualified privilege. *Rainey v. Shaffer* (1983), 8 Ohio App.3d 262, 263–264, 8 OBR 354, 355–357, 456 N.E.2d 1328, 1330–1332. Only where the statements are made maliciously is the privilege destroyed.

In the present case, by Rinehart's own deposition testimony, the statements were clearly made within the scope of Rinehart's employment and as such were afforded a qualified privilege. Rinehart asserts that the court erred in relying on *Evely v. Carlon Co., supra,* because in that case the appellant conceded in his complaint that the statements were made within the scope of employment. However, in the present case, Rinehart, through his deposition testimony, although not expressly conceding the circumstances, clearly revealed that the alleged defamatory statements were made in the scope of employment because all such alleged statements concerned the activities of Rinehart arising out of his employment status with Reuben. Moreover, none of these statements was directed to Rinehart as an individual apart from his employment.

Given the above, after GKI established a qualified privilege through its summary judgment motion and supporting evidence, it was incumbent upon Rinehart to bring forth *evidence* of actual malice. *Evely v. Carlon Co., supra,* 4 Ohio St.3d at 165, 4 OBR at 406–407, 447 N.E.2d at 1292–1293. Civ.R. 56(E) sets forth the requirements for opposing a motion for summary judgment as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The record before us reveals that Rinehart failed to support his memo in opposition with any facts as contemplated in Civ.R. 56(E). Although Rinehart made bold allegations that he had evidence that he was set up, he did not support his memo with any affidavits or depositions as required by Civ.R. 56(E).

█ Rinehart further alleges that because in his deposition he denied that the allegations were true, a genuine issue of material fact arose as to whether Reuben made the statements with knowledge of their falsity, and, therefore, a genuine issue arose as to whether a qualified privilege attached. However, *Evely v. Carlon Co., supra,* and Civ.R. 56(E) require that there be evidence adduced beyond the mere allegations contained in the complaint. In this regard, Rinehart's denial in his deposition is no more than a restatement of his denial in his complaint.

█ Finally, Rinehart contends that genuine issues of material fact existed as to whether he presented sufficient evidence to establish an actionable claim

in malpractice against GKI apart from the evidence presented in the case within the case. Rinehart asks this court to recognize the existence of other damages—specifically those damages resulting from Rinehart's attendance at cancelled depositions, the cost of phone calls, and inquiring about his case after the statute of limitations had run. Rinehart cites this court's decision in *Cousino v. Butz* (Aug. 23, 1985), Sandusky App. No. S–84–36, unreported, 1985 WL 9353, wherein we recognized as compensatory damages in a legal malpractice action the costs of defending a foreclosure action which might not have occurred but for the attorney's malpractice. We conclude, however, that *Cousino* is distinguishable from the case before us. In *Cousino*, the attorney's malpractice caused the bank to foreclose on the appellants' property and, as a result, appellants were forced to defend a foreclosure action. Under those facts, the best measure of damages is the cost of defending the foreclosure action. However, in the case before us, the attorney's malpractice precluded Rinehart from bringing an action for defamation against Reuben. Under these facts, we conclude that the best measure of damages is the value of the defamation claim. Moreover, the damages which Rinehart claims to have incurred fall more appropriately under the damages sustained as a result of fraud. Rinehart did recover such damages from GKI in the jury trial. On the claim of fraud, Rinehart recovered $1,600 from GKI.

Accordingly, we find that the trial court's grant of summary judgment to GKI on the legal malpractice claim was not in error, and Rinehart's first assignment of error is not well taken.

Rinehart's second assignment of error asserts that the trial court erred in refusing to allow testimony of the value of Rinehart's defamation claim and in instructing the jury that that case had no value.

With regard to the jury instruction, in keeping with our prior discussion, as we have no jury instructions before us for review, we must assume their validity. Moreover, as we have found that the trial court properly granted GKI's summary judgment motion on the ground that the defamation case had no value, the trial court did not err in refusing to allow testimony on the damages in regard to the defamation case. Accordingly, appellant's second assignment of error is not well taken.

Finally, we note that in its brief, appellee GKI raised the following assignment of error:

"The trial court erred, in overruling appellee's motion for summary judgment on the fraud claim, the motion for reconsideration on the fraud claim and the directed verdict on the fraud claim."

The record before us reveals that GKI has never filed a notice of appeal or notice of cross-appeal in this case, as required by App.R. 3(A) and 4(A). Moreover, GKI's assignment of error does not fall within R.C. 2505.22, which allows an appellee to raise an assignment of error in its brief to protect the decision of the trial court. See *Parton v. Weilnau* (1959), 169 Ohio St. 145, 170–171, 8 O.O.2d 134, 147–148, 158 N.E.2d 719, 735–736. In the present case, GKI's assignment of error requests reversal of determinations made by the trial court. Accordingly, to preserve this assignment of error for appellate review, GKI was required to file a notice of appeal pursuant to the above-cited appellate rules. Because GKI has not filed a notice of appeal this purported assignment of error is not properly before the court.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER and SHERCK, JJ., concur.